Case No. 14-35576

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

MICHAEL G. SCHWERN, *Plaintiff-Appellee*,

vs.

NÓIRÍN PLUNKETT, *Defendant-Appellant*.

_____

Appeal from the United States District Court
for the District of Oregon, Portland Division
Case No. 3:14-CV-00146-PK
Honorable Paul Papak, Magistrate Judge
Honorable Marco A. Hernández, District Judge

_____

**BRIEF OF APPELLEE
MICHAEL G. SCHWERN**

_____

Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW Fifth Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
ATTORNEY FOR APPELLEE

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION ........................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................................ 1

STATEMENT OF THE CASE ................................................................. 2

STATEMENT OF FACTS ....................................................................... 2

SUMMARY OF ARGUMENT .................................................................. 11

STANDARD OF REVIEW ....................................................................... 12

ARGUMENT ........................................................................................... 13

   I.  The Court Should Dismiss The Appeal for Lack of Jurisdiction ....... 13

   II. The District Court Acted Reasonably in Admitting Plaintiff's
      Exhibits ........................................................................................ 16

   III. Plaintiff Presented Substantial Evidence to Support a Prima Facie
      Case and Established a Probability That He Will Prevail on Each
      of His Claims ............................................................................... 21

      A. Plaintiff Presented Substantial Evidence in Support of His
         Defamation Claim ..................................................................... 24

      B. Plaintiff Presented Substantial Evidence in Support of His
         Intentional Infliction of Severe Emotional Distress Claim ........... 27

      C. Plaintiff Presented Substantial Evidence in Support of His
         Intentional Interference with Prospective Economic Relations
         Claim ......................................................................................... 29

CONCLUSION ....................................................................................... 31

**Page**

STATEMENT OF RELATED CASES ........................................................ 32

CERTIFICATE OF COMPLIANCE ........................................................... 33

CERTIFICATE OF SERVICE .................................................................... 34

# <u>TABLE OF AUTHORITIES</u>

## I.   Statutes

Or. Rev. Stat. §109.309(3)(a)(C) ................................................................. 26

Or. Rev. Stat. §183.482(8)(c) ..................................................................... 26

Or. Rev. Stat. §31.150 ...................................................................... 16, 21, 26

Or. Rev. Stat. §31.150(1) ........................................................................ 14, 18

Or. Rev. Stat. §31.150(3) ............................................................................. 21

Or. Rev. Stat. §31.150(4) ............................................................................. 18

Or. Rev. Stat. §34.040(1)(e) ......................................................................... 26

Or. Rev. Stat. §420A.203(6)(c) ..................................................................... 26

Or. Rev. Stat. §663.215(1) ........................................................................... 26

Or. Rev. Stat. §813.450(4)(c) ....................................................................... 26

28 U.S.C §1292(a) ................................................................................... 15-16

28 U.S.C. §1291 ...................................................................................... 13-15

28 U.S.C. §1292(b) ....................................................................................... 16

28 U.S.C. §1746 ........................................................................................... 18

## II.   Rules of Court

D. Or. Local Rule 7-1(e) ........................................................................... 18-19

Fed. R. Civ. P. 54(b) .................................................................................... 15

Or. Rule Civ. P. 1 E ..................................................................................... 18

### III. Cases

*Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) . 15

*Affolter v. Baugh Const. Oregon, Inc.*, 183 Or. App. 198, 51 P.3d 642 (2002) 25

*Allen v. Hall,* 328 Or. 276, 974 P.2d 199 (1999)................................................ 29

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ................................................ 14

*Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945) ....... 14

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S. Ct. 206,
  83 L. Ed. 126 (1938)........................................................................................ 26

*Cron v. Zimmer*, 255 Or. App. 114, 296 P.3d 567 (2013)................................. 30

*Davis v. Sladden*, 17 Or. 259, 21 P. 140 (1889) ................................................ 25

*DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013)......... 13-14

*Doe v. Gangland Productions, Inc.*, 730 F.3d 946 (9th Cir. 2013) ................... 12

*Englert v. MacDonnell*, 551 F.3d 1099 (9th Cir. 2009) .............................. 13-16

*Hall v. May Dept. Stores Co.*, 292 Or. 131, 637 P.2d 126 (1981).................... 27

*Hinkle v. Alexander*, 244 Or. 267, 411 P.2d 829 (1966) .................................. 25

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009)......................... 13

*Kraemer v. Harding*, 159 Or. App. 90, 976 P.2d 1160 (1999)......................... 28

*Lanza v. Ashcroft*, 389 F.3d 917 (9th Cir. 2004).............................................. 15

*Luisi v. Bank of Commerce*, 252 Or. 271, 449 P.2d 441 (1969).................. 30-31

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939
  (9th Cir. 2011) ....................................................................................... 13, 20

*McGanty v. Staudenraus,* 321 Or. 532, 901 P.2d 841 (1995) ..................... 29-30

*Metabolic Research, Inc. v. Ferrell*, 668 F.3d 1100 (9th Cir. 2012)........... 14-15

*Muresan v. Philadelphia Romanian Pentecostal Church*, 154 Or. App. 465, 962 P.2d 711 (1998) ................................................................. 25

*National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or. App. 560, 188 P.3d 332, *rev. den.*, 345 Or. 317 (2008) .................................... 24

*Neumann v. Liles*, 261 Or. App. 567, 323 P.3d 521 (2014) ................. 21, 24, 26

*OEA v. Parks*, 253 Or. App. 558, 291 P.3d 789 (2012) .................................. 27

*Patton v. J.C. Penney Co., Inc.*, 301 Or. 117, 719 P.2d 854 (1986)................. 27

*Ruble v. Kirkwood*, 125 Or. 316, 266 P. 252 (1928) ........................................ 25

*Schiele v. Montes*, 231 Or. App. 43, 218 P.3d 141 (2009) ............................... 27

*Staten v. Steel*, 222 Or. App. 17, 191 P.3d 778 (2008)......................... 19, 21, 26

*Straube v. Larson,* 287 Or. 357, 600 P.2d 371 (1979)...................................... 29

*Wampler v. Palmerton,* 250 Or. 65, 439 P2.d 601 (1968)................................ 29

*Young v. Davis*, 259 Or. App. 497, 314 P.3d 350 (2013)..................... 21, 26, 29

## IV.   Secondary Sources

Charles Alan Wright & Mary Kay Kane, Federal Practice & Procedure: Federal Practice Deskbook (2008) ................................................................ 13

Oregon State Bar, *Torts* (2012 rev.) ................................................................ 29

## INTRODUCTION

The magistrate judge correctly recommended that the district court deny defendant's anti-SLAPP special motion to strike the complaint. The district court correctly adopted the magistrate judge's findings and recommendation. This court lacks jurisdiction over defendant's ensuing interlocutory appeal. Even if the court has jurisdiction, the court should affirm the district court's order, because plaintiff presented sufficient admissible evidence, when considered as it must be in the light most favorable to his allegations, to overcome the special motion to strike.

## STATEMENT OF JURISDICTION

Defendant correctly recites the basis for district court jurisdiction, and plaintiff agrees that defendant's appeal was timely filed. App. Brief at 1. This court lacks jurisdiction of defendant's appeal, however, because an order denying an Oregon special motion to strike is not an appealable collateral order in federal court even after the amendments to the Oregon anti-SLAPP statute cited by defendant. *See infra* at 13-16.

## ISSUES PRESENTED FOR REVIEW

1.     Is an order denying an Oregon anti-SLAPP special motion to strike a complaint an appealable collateral order in federal court?

1

2.      Did the district court engage in a reasonable exercise of discretion in admitting all of plaintiff's exhibits in the course of ruling on defendant's special motion to strike?

3.      Did plaintiff present substantial evidence to support a prima facie case and thereby establish that there is a probability that plaintiff will prevail on each of his claims?

## STATEMENT OF THE CASE

Plaintiff generally accepts defendant's statement of the case as adequate for appellate review, but plaintiff rejects defendant's contention that the declarations of Casey West (ER 51-53) and Bear Wilner-Nugent (ER 58-59) were untimely filed. Plaintiff addresses the magistrate judge's recommendation, and the district court's decision, to admit these declarations into evidence *infra* at 16-20.

## STATEMENT OF FACTS

Plaintiff is a prominent open source software developer. For years, plaintiff was frequently invited to speak at conferences pertaining both to open source programming and to gender equity in the software development community and on the internet more generally. Plaintiff has been a sought-after consultant to multiple companies and organizations. Plaintiff participates in professional, volunteer, and

social networks of colleagues and friends in multiple states and countries, many of which communicate heavily over the internet. ER 61, 87.

Defendant has spent years working and volunteering in fields that overlap significantly with plaintiff's work and volunteer life. Defendant is well-acquainted with plaintiff's professional and personal contacts and activities. Defendant and plaintiff were previously married, but are now divorced, with their divorce judgment having become final on October 1, 2013. ER 61, 87-88.

The parties had a sexual relationship throughout their marriage. This relationship included various activities commonly referred to as BDSM (bondage, domination, and sadomasochism). All the parties' BDSM activities were entirely consensual. ER 60-61, 89.

On September 19, 2013, several hours after filing their divorce documents, the parties planned to have a final date together. They met at plaintiff's house (in which defendant was living and plaintiff was not living at that point). The parties talked and had sex. They engaged in consensual BDSM activities as part of the sex. ER 60-61, 89.

Officers of the Portland Police Bureau arrested plaintiff late that same night. Plaintiff cooperated with the arrest. Plaintiff was originally booked on misdemeanor charges of strangulation and harassment. Plaintiff was released from jail and appeared in court for arraignment on September 23. At that time, plaintiff

learned that the Multnomah County District Attorney's Office had declined to issue a criminal complaint against him. ER 61, 89-90.

On September 30, plaintiff's counsel spoke with Senior Deputy Multnomah County District Attorney Christine Mascal in order to ascertain whether the case would remain in no-complaint status. Ms. Mascal said that defendant would be testifying to a grand jury in October about sexual offenses that plaintiff had allegedly committed against defendant. Ms. Mascal added that the grand jury would welcome hearing from plaintiff also. Counsel retained a private investigator and conducted an investigation of the facts and circumstances. Counsel determined that the evidence exonerated plaintiff. Counsel presented this evidence to Ms. Mascal and her colleague, Deputy District Attorney Laura Maurer. Counsel also told Ms. Mascal and Ms. Maurer that plaintiff would gladly testify before the grand jury. After receiving this information from counsel, on October 23, Ms. Maurer left counsel a voicemail explaining that her office would be cancelling the grand jury and not proceeding with the criminal case against plaintiff. ER 61, 90.

In addition to her concededly privileged statements to medical personnel, police, and prosecutors, defendant, on and after September 19, 2013, intentionally made false and unprivileged claims to other third parties that plaintiff had sexually abused defendant and subjected defendant to intimate partner violence. All of these communications and others like them, originating from defendant, were

4

republished in multiple ways across the internet, reaching the eyes of plaintiff's former employers and potential future employers, members of organizations with whom plaintiff had volunteered or hoped to volunteer or before whom plaintiff had spoken or hoped to speak, and friends and acquaintances of plaintiff. Plaintiff learned of the false claims that defendant was making about him by three means: posts on Twitter, public statements by organizations with which plaintiff and defendant had both been involved, and the behavior of friends. The various republications of defendant's false claims, and their ramifications, can all be traced back to defendant's intentional acts. ER 60-61, 90-91, 94.

On September 21, prominent open source software developers Ashe Dryden and Leigh Honeywell both tweeted that plaintiff had been arrested for attacking defendant. Fellow developer Tim Chevalier made a similar tweet on September 22. ER 61-64, 91.

On September 25, the Ada Initiative published a blog post on its website entitled "The Ada Initiative does not support Michael Schwern's ally work." The post contains the statement "The Ada Initiative declines now and in future to work with Michael Schwern or to promote his work based on the information above" about plaintiff's arrest. The Ada Initiative subsequently added links to these

5

negative claims about plaintiff to its previously published blog posts about plaintiff's work on the Ada Initiative's behalf. ER 61, 65-67, 91-92.[1]

On September 30, the Geek Feminism blog, another institution in open source feminist culture to which both parties had previously contributed, published a post on its website entitled "Co-Signing the Ada Initiative's Statement on Michael Schwern." The post endorses the claims made in the September 25 Ada Initiative post. The Geek Feminism post is co-signed by seven individuals, three of whom — Ashe Dryden, Leigh Honeywell, and Tim Chevalier — had previously tweeted about plaintiff's arrest. ER 61, 68-71, 92.

On November 18, Stumptown Syndicate published a blog post on its website authored by its president, Christie Koehler, entitled "Regarding Michael Schwern."[2] Stumptown Syndicate asserted in the post that plaintiff's "actions harmed another community member." Therefore, the post continues, "The

--------

[1] The Ada Initiative is a nonprofit association that, according to its mission statement, "helps women get and stay involved in open source, open data, open education, and other areas of free and open technology and culture." Through its own conferences and its participation in other conferences and events and online dialogue generally, the Ada Initiative claims on its website to have reached over two million people in the three years since its founding. Valerie Aurora, one of the founders of the Ada Initiative, has been friends with both parties. Both parties have done extensive volunteer work on the Ada Initiative's behalf. ER 61, 91.

[2] Stumptown Syndicate is a nonprofit organization that coordinates many open source community activities in Portland and with which plaintiff had long been an active contributor.

6

Stumptown Syndicate Board has concluded that the safety and well-being of our community is best served by not allowing Schwern to attend our events or other activities until such time as we indicate it is appropriate for him to resume involvement." ER 61, 72, 92-93.

In Boston, Massachusetts, Casey West, an old friend of plaintiff's, encountered defendant after plaintiff's September arrest. Defendant intentionally and falsely told Mr. West that plaintiff had raped her with a knife. Defendant also intentionally and falsely told Mr. West that plaintiff's work with open source software was all a ploy to get closer to defendant's friends so that plaintiff could control defendant and interfere with defendant's ability to tell people about plaintiff's supposed abuse of defendant. ER 51-53, 61, 93-94.

Talena Gandy was a friend of both parties. Ms. Gandy moved from Portland to the Boston area before defendant did. Ms. Gandy subsequently stopped speaking with plaintiff. ER 61, 93.

By its nature, the open source software movement depends heavily on an ongoing free and open exchange of information among its participants. Plaintiff and defendant are both exceedingly well versed in this information exchange and the interpersonal dynamics undergirding it. Plaintiff and defendant both understand that the open source movement would not be where it is today without the many professional conferences at which its members meet and do business. ER 61, 94.

7

Stumptown Syndicate produces the Open Source Bridge conference. Open Source Bridge is an increasingly important conference in the open source software movement. Plaintiff has been a featured speaker at nearly every Open Source Bridge conference that has been held. Now that Stumptown Syndicate has publicly declined to associate itself with plaintiff, plaintiff will lose the ability to speak at and participate in Open Source Bridge. This will cost plaintiff numerous professional networking and economic opportunities and has already caused plaintiff serious mental harm and severe emotional distress. ER 61, 94-95.

As a direct and proximate result of defendant's defamation of plaintiff, members of the Stumptown Syndicate Board of Directors, including but not limited to Melissa Chavez, who plaintiff had previously known as friends, have already disassociated themselves from plaintiff. This has caused plaintiff serious mental harm and severe emotional distress. ER 61, 95.

O'Reilly Media is a leading publisher of educational materials about software, including open source software. O'Reilly Media produces the Open Source Conference, which is the foremost annual open source event in the world. Plaintiff and defendant were both instrumental in creating a code of conduct for the Open Source Conference aimed at combating sexual harassment and other discriminatory behaviors on the part of participants. ER 61, 73-76, 95.

8

Defendant has previously arranged to have participants ejected from the Open Source Conference. If that were to happen to plaintiff, plaintiff would suffer a further loss of professional, economic, and personal opportunities. The likelihood of it happening, in view of the ways in which defendant's defamatory remarks about plaintiff have already been promulgated online, has already caused plaintiff serious mental harm and severe emotional distress. ER 61, 95-96.

Plaintiff has historically earned significantly less than his true earning capacity because he has preferred to work less than full time in order to devote more time to his numerous volunteer pursuits and because he has enjoyed having a flexible schedule with many opportunities for travel. For these reasons, for the last few years, plaintiff has put together consulting and teaching opportunities and speaking honoraria to make an annual income of approximately $30,000 before taxes. If plaintiff were to receive any of the many salaried jobs in his professional field for which he is well-qualified, he would easily be able to demand more than $130,000 per year. ER 61, 96.

Defendant's poisoning of the professional well against plaintiff has cost plaintiff job opportunities with prospective employers. Due to the persistence of information on the internet and the widespread condemnation with which actual sexual assault and intimate partner violence are rightly met, the effects of defendant's false accusations of sexual assault and intimate partner violence will

9

likely operate to deny these opportunities for more than 10 years into the future. Thus plaintiff is likely to lose future economic opportunities worth more than $1,000,000 ($100,000 per year in increased salary over a minimum of 10 years) as a direct and proximate result of defendant's misconduct. This state of affairs has also caused plaintiff serious mental harm and severe emotional distress. ER 61, 96.

For instance, throughout late 2013, plaintiff was contemplating applying for a salaried job at the Mozilla Corporation, which coordinates the development of the Firefox web browser and the Thunderbird email client, among other open source software projects. Defendant was aware of this. Ms. Koehler, the president of Stumptown Syndicate, is a senior project manager at Mozilla. Losing the ability to seek employment at Mozilla would deprive plaintiff of significant economic opportunities. Further, the knowledge of Mozilla's likely disposition toward plaintiff has caused plaintiff serious mental harm and severe emotional distress. ER 61, 96-97.

As a direct and proximate result of defendant's defamation of plaintiff, companies whose employees sit on the Ada Initiative's Board of Directors or who are sponsors of the Ada Initiative (including but not limited to Google, Puppet Labs, DreamHost, DreamWidth, RedHat, Dyn, Heroku, O'Reilly Media, and Mozilla) now likely also will not hire plaintiff. This will deprive plaintiff of

10

significant economic opportunities. It has already caused plaintiff serious mental harm and severe emotional distress. ER 61, 97.

## SUMMARY OF ARGUMENT

This court ordered defendant to show cause why the appeal should not be dismissed for lack of jurisdiction. Defendant responded to the order to show cause, plaintiff replied, and the court deferred the question of jurisdiction to the merits panel. The court's ultimate answer to this question should be negative. A federal district court order denying an anti-SLAPP motion under Oregon law is not an appealable collateral order because Oregon's anti-SLAPP statutes do not confer a substantive immunity from suit, notwithstanding defendant's strenuous argument from legislative history.

The district court adopted the magistrate judge's recommendation to consider two declarations plaintiff submitted in opposition to defendant's anti-SLAPP motion even though plaintiff submitted those declarations after filing his memorandum in opposition (yet still before the hearing on the motion commenced). That decision to admit the declarations as substantive evidence notwithstanding the timing of their filing was not an abuse of discretion. No applicable statute, rule of court, or order prescribed a deadline for the submission of evidence on the anti-SLAPP motion. The only deadlines in force pertained to

11

legal briefing. Additionally, defendant was clearly able to formulate arguments about the contents of the declarations, meaning that defendant cannot demonstrate the timing of their filing prejudiced her. The court should affirm the district court's admission of the declarations.

Finally, the district court correctly determined that plaintiff had met his burden of production at the second stage of the anti-SLAPP analysis and, accordingly, denied defendant's special motion to strike on its merits. Plaintiff introduced substantial evidence, as defined by Oregon law, of each of the elements of his claims of defamation, intentional infliction of severe emotional distress, and intentional interference with prospective economic relations. The inferences that the magistrate judge recommended the district court draw from plaintiff's evidence followed logically from that evidence without being unduly speculative. Given what the Oregon Court of Appeals has called a "low bar" for a plaintiff to demonstrate that a complaint is substantive, rather than being filed to oppress or harass, the court should permit this action to get underway in earnest.

## STANDARD OF REVIEW

This court reviews the district court's denial of an anti-SLAPP special motion to strike a complaint *de novo*, as defendant states. App. Brief at 2, citing *Doe v. Gangland Productions, Inc.*, 730 F.3d 946, 951 (9th Cir. 2013). The court

reviews the district court's evidentiary rulings for abuse of discretion and will reverse them only if the court is "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (internal quotation marks omitted). The court reviews the district court's factual determinations for clear error. *Klein v. City of San Clemente*, 584 F.3d 1196, 1200 (9th Cir. 2009).

## <u>ARGUMENT</u>

**I.      The Court Should Dismiss The Appeal for Lack of Jurisdiction.**

*Englert v. MacDonnell*, 551 F.3d 1099, 1102 (9th Cir. 2009) controls this case, even in light of defendant's argument from legislative history, App. Brief at 11-12, and the *dicta* defendant cites from *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1016 n. 8 (9th Cir. 2013) (a California case in which the interpretation of Oregon's anti-SLAPP statute was not material to the Court's decision), App. Brief at 12-13. The *Englert* court noted that "'The historic policy of the federal courts has been that appeal will lie only from a final decision.' Charles Alan Wright & Mary Kay Kane, Federal Practice & Procedure: Federal Practice Deskbook §108 (2008)." 551 F.3d at 1102. This policy is codified at 28 U.S.C. §1291, which gives jurisdiction to the courts of appeals to hear appeals

"from all final decisions of the district courts of the United States." "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945).

*Englert*, 551 F.3d at 1103. By contrast, here the district court did not enter a final decision but only an order denying the motion. ER 1-2.

Defendant argues that, notwithstanding the general policy against hearing appeals of nonfinal decisions, an order denying an anti-SLAPP motion is an appealable collateral order. That is precisely the argument that the *Englert* court went on to reject in the portion of its opinion immediately following the portion quoted above. 551 F.3d at 1103-1107. According to defendant, the post-*Englert* addition of the sentence "If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion" to Or. Rev. Stat. §31.150(1) wrought a significant change to the statute. App. Brief at 11-13. More specifically, defendant asserts that this sentence converts what this court previously recognized as a gatekeeping statute aimed at weeding out frivolous or harassing lawsuits, *Englert*, 551 F.3d at 1104-1105, into a substantive immunity from suit that implies a right to interlocutory appeal. App. Brief at 13-14, citing *DC Comics*, 706 F.3d at 1015, 1016 n. 8, and *Batzel v. Smith*, 333 F.3d 1018, 1025-1026 (9th Cir. 2003). In this court's case law, the dispositive criterion for immediate appellate jurisdiction following the denial of an anti-SLAPP motion is whether the underlying anti-SLAPP statute creates such a substantive immunity. *Metabolic Research, Inc. v.*

14

*Ferrell*, 668 F.3d 1100, 1105-1108 (9th Cir. 2012) (holding that Nevada's statute, like Oregon's did not create such an immunity).

Even if the district court's order is construed as a "limited judgment" — which it does not say on its face it is, *see* Fed. R. Civ. P. 54(b) — that does not mean that Oregon's post-*Englert* amendment to the anti-SLAPP law has the effect in federal court that defendant hopes it has. Oregon is certainly capable of providing for interlocutory appellate jurisdiction in *state* court. Plaintiff does not dispute that the 2009 amendment to the anti-SLAPP law had the effect of creating such state jurisdiction. But *federal* appellate jurisdiction is a creature of *federal* statute. *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Lanza v. Ashcroft*, 389 F.3d 917, 929 (9th Cir. 2004). Therefore, Oregon's addition of a right of immediate appeal in state court cannot force a change in federal law on the question of whether Oregon's anti-SLAPP statute creates a substantive immunity from suit. As the court held in *Englert*, its discussion of whether or not Oregon statutes provided for an appeal as of right from an order denying an anti-SLAPP motion "is not intended to suggest that Oregon law determines the availability of appellate review here. On the contrary, federal law is controlling on this issue." 551 F.3d at 1107.

As observed above, 28 U.S.C. §1291 does not provide for appeals from interlocutory decisions. This is not one of the types of case covered by 28 U.S.C

15

§1292(a)'s conferral of interlocutory appellate jurisdiction, nor is it a case in which the district court has certified a question of law to this court under 28 U.S.C. §1292(b). Thus federal statutes are of no assistance to defendant.

Defendant's arguments are well-researched but inapposite. The legislative history cited by defendant, ER 110-131, is, at best, a guide to interpreting the intent of state lawmakers in making state law. Even in the view most favorable to defendant, the Oregon Legislative Assembly cannot alter the policy choices that govern whether federal appellate courts have jurisdiction to hear interlocutory appeals. These choices are embodied in federal statutes and reinforced by federal case law. Only this court or the Supreme Court can hold that *Englert* is no longer an authoritative statement of the law on federal appeals from the denial of anti-SLAPP motions arising under Or. Rev. Stat. §31.150 *et seq*. Neither court has done so. For the reasons set forth in *Englert*, 551 F.3d at 1103-1107, neither court should. Instead, this court should dismiss defendant's appeal for lack of jurisdiction.

## II.    The District Court Acted Reasonably in Admitting Plaintiff's Exhibits.

The district court did not abuse its discretion by adopting the magistrate judge's recommendation to consider the declarations of declarations of Mr. West (ER 51-53) and plaintiff's counsel (ER 58-59) as part of plaintiff's evidence in opposition to defendant's special motion to strike.

16

Plaintiff filed his complaint on January 27, 2014. Defendant filed her special motion to strike, supporting memorandum, and declaration on February 20. On March 10, the magistrate judge ordered that plaintiff could have until March 20 to file a response to defendant's motion. Plaintiff filed his responsive memorandum, declaration, and exhibits on March 20. On April 2, defendant filed her reply memorandum. The magistrate judge scheduled oral argument on defendant's motion for April 9. ER 102-103.

On March 30, defendant's counsel emailed plaintiff's counsel with a list of evidentiary objections that defendant intended to make at the motion hearing. One of the objections was that plaintiff's exhibits were unauthenticated. Plaintiff's counsel immediately filed a declaration authenticating the exhibits. ER 58. Defendant did not object to the evidentiary sufficiency of this declaration, but rather only to its timeliness. ER 34.

As part of the process of preparing to oppose defendant's motion, plaintiff's counsel submitted a proposed declaration to plaintiff's friend Mr. West based on facts counsel had learned in his investigation of the case. Mr. West evidently took some time to consult with his own attorney in order to determine whether to sign the declaration. Tr. 12. On April 9, as plaintiff's counsel was preparing for the hearing, counsel received Mr. West's signed declaration. Counsel immediately filed it. Again, defendant objected to the timeliness of the declaration. Tr. 4-9; ER

17

33-36.

District of Oregon Local Rule 7-1(e) requires that a response to a motion be filed within 14 days after service of the motion. Neither that rule nor any other rule establishes a deadline for the submission of evidence, however. Or. Rev. Stat. §31.150(4) requires the court to consider "pleadings and supporting and opposing affidavits[3] stating the facts upon which the liability or defense is based." It does not establish a deadline for filing such affidavits.

The magistrate judge determined that plaintiff's counsel's declaration and Mr. West's declaration were both untimely filed. He nonetheless recommended that the district court consider the declarations as though they had been timely filed. The magistrate judge agreed with plaintiff's oral argument, Tr. 12, to the effect that excluding the declarations could, at worst, lead to dismissal of the complaint without prejudice. Or. Rev. Stat. §31.150(1). If the complaint were dismissed without prejudice, plaintiff could immediately refile it. Doing so would make the declarations' use in response to any subsequent motion to strike timely. The magistrate judge thus recommended that the district court admit the declarations in furtherance of judicial economy. ER 17-19.

---

[3] Under 28 U.S.C. §1746, as under Or. Rule Civ. P. 1 E, sworn declarations such as those submitted by both sides in this case may be used interchangeably with affidavits.

18

Defendant objected to this aspect of the findings and recommendation. ER 34-36. She renews this objection on appeal. App. Brief at 15-17. From defendant's perspective, the timing of plaintiff's filing of the declarations violated Local Rule 7-1(e). Defendant also argues that considering plaintiff's declarations would contravene the legislative intent behind the anti-SLAPP statutes, which are meant to provide for expeditious dismissal of non-meritorious lawsuits arising out of public participation in government or discussion of issues of public interest. App. Brief at 16, citing *Staten v. Steel*, 222 Or. App. 17, 27, 30, 191 P.3d 778 (2008).

The district court correctly overruled defendant's objections. As the magistrate judge explained, receiving rather than excluding the declarations was the course of action best serving the overriding goal of a speedy and conclusive determination of this action. Moreover, the declarations were relatively peripheral to the magistrate judge's ultimate recommendation that plaintiff be allowed to proceed with this action. Counsel's declaration was essentially ministerial in character, as it simply authenticated exhibits rather than supplying additional substantive evidence. And the magistrate judge explicitly said that he did not rely heavily on Mr. West's declaration. ER 18 n. 3.

Additionally, no source of law establishes a deadline for the submission of evidence in opposition to a special motion to strike a complaint. Under the governing statutes, plaintiff could have submitted evidence at any time until the

magistrate judge took the matter under advisement at the close of the hearing. For that independent reason, the declarations were, in fact, timely filed.

Finally, defendant's counsel essentially invited the filing of plaintiff's counsel's declaration by pointing out a potential evidentiary objection that counsel's declaration straightforwardly and conclusively answered. ER 58. As to Mr. West's declaration, defendant proved herself amply capable of responding to Mr. West's averrals on their merits at the hearing, Tr. 5-10; defendant did so a second time in her objections to the magistrate judge's findings and recommendation, Objections at 5-6, 9; and defendant did so a third time on appeal, App. Brief at 19. The manifest lack of prejudice to defendant from either of the challenged declarations — since defendant's counsel pointed out the need for one of the declarations and was fully prepared to answer the other declaration — is still another reason that the district court was correct to accept the magistrate judge's recommendation to consider the declarations in its ultimate determination of the motion. Because the district court did not abuse its discretion in doing so (and certainly not to an extent that "lies beyond the pale of reasonable justification under the circumstances," *McCollough*, 637 F.3d at 953), this court should not disturb its decision.

### III. Plaintiff Presented Substantial Evidence to Support a Prima Facie Case and Established a Probability That He Will Prevail on Each of His Claims.

The magistrate judge determined that plaintiff had adduced sufficient

evidence for the action to proceed normally despite defendant's special motion to

strike. The magistrate judge described the governing legal standard:

> In evaluating special motions to strike under Section 31.150, the Oregon courts consider "the facts underlying plaintiffs' claims in the light most favorable to plaintiffs," *Neumann v. Liles*, 261 Or. App. 567, 570 n. 2[, 323 P.3d 521] (2014), and do not weigh the evidence or make any determination of the likelihood that plaintiffs will ultimately prevail, *see Young v. Davis*, 259 Or. App. 497, 508[, 314 P.3d 350] (2013). Each of the two steps of the process presents a question of law. *See* [*Neumann*] at 572, *citing Young*, 259 Or. App. at 507-510. Section 31.150 is intended to create a "low bar" for plaintiffs to overcome, and is intended only "to weed out meritless claims meant to harass or intimidate — not to require that a plaintiff prove [hi]s case before being allowed to proceed further." *Young*, 259 Or. App. at 508, *citing Staten v. Steel*, 222 Or. App. 17, 32 (2008) ("The purpose of the special motion to strike procedure… is to expeditiously terminate *unfounded* claims that threaten constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that a claim is *meritorious*" (emphasis original)). A plaintiff meets his burden under Section 31.150 by submitting evidence that, if credited, "would permit a reasonable factfinder" to rule in the plaintiff's favor. *Neumann*, 261 Or. App. at 575; *see also Young*, 259 Or. App. at 508 ("the presentation of substantial evidence to support a *prima facie* case is, *in and of itself*, sufficient to establish a probability that the plaintiff will prevail; whether or not it is 'likely' that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3)" (emphasis original)). As necessarily follows from the foregoing, the fact that the defendant may present substantial evidence to the contrary is likewise irrelevant to determining whether the plaintiff has met his burden. *See Young*, 259 Or. App. at 510.

ER 6-7. The magistrate judge and the district court correctly relied on the two most

recent reported Oregon appellate cases applying Or. Rev. Stat. §31.150 *et seq*. This

21

court should do the same.

A pair of factual determinations made in keeping with the above-described legal standard underlie the magistrate judge's conclusion that plaintiff presented substantial evidence to support a prima facie case as to each of his three claims. ER 20-22. First, the magistrate judge assumed "that [defendant]'s statements to third parties characterizing the incident of September 19, 2013 as nonconsensual sexual and physical assault, if made, were false." ER 21. Mindful of the way in which the law requires the court to consider plaintiff's evidence at this stage, defendant did not object to this assumption for purposes of the special motion to strike. ER 36.[4]

Second, the magistrate judge recommended that the court infer, also for purposes of the motion, "that [defendant] made unprivileged defamatory statements to third parties regarding [plaintiff]'s conduct of September 19, 2013, as alleged in [plaintiff]'s complaint." ER 22. The magistrate judge explained that this inference was based on the timing and sequence of the promulgation of particular sorts of negative information about plaintiff online. ER 21-22. Here, defendant parts ways from the magistrate judge, characterizing the inference that defendant made the unprivileged defamatory statements in question as unduly speculative.

---

[4] In light of defendant's concession of this point, *amicus curiae* National Crime Victim Law Institute's argument to the contrary lacks force. *See* Amicus Brief at 4-8.

App. Brief at 18-20.

Viewing the facts underlying plaintiff's claims in the light most favorable to plaintiff, however, the inference recommended by the magistrate judge is reasonable, even in light of the contrary arguments made by defendant, App. Brief at 17-20. The parties had consensual sex on September 19, 2013. ER 60-61, 89. Hours later, plaintiff was booked and released on misdemeanor domestic violence charges. ER 61, 89-90. Within three days, three of the parties' professional peers separately asserted on Twitter that plaintiff had assaulted defendant. ER 61-64, 91.

On September 23, the Multnomah County district attorney's office first announced that it would not prosecute plaintiff. After a more thorough review by sex crime prosecutors, the office confirmed its decision not to prosecute. ER 61, 90. Notwithstanding these favorable legal developments for plaintiff, during the ensuing several weeks, three prominent organizations in the parties' professional community — organizations with which defendant had close ties — publicly denounced plaintiff. ER 61, 91-93. Read as they must be in context, the organizations' statements were not simply responses to plaintiff's arrest on misdemeanor charges that the district attorney's office immediately declined to file.

Based on these facts, as the magistrate judge explained,

it is a fair inference… that at least some of the third parties publishing such posts received their information regarding the incident directly from

23

> [defendant]… if only due to the manifest improbability that members of the general public would otherwise have learned about the incident (and adopted [defendant]'s perspective as to what had occurred) directly from publicly available arrest records within fewer than 48 hours following the arrest.

ER 21-22. This inference is corroborated by the fact that, during the same time period, defendant demonstrably made defamatory comments of the sort that she inferentially made to the authors of Exhibits 1 through 7 (ER 62-72) to Mr. West. ER 51-53, 61, 93-94. Even if the district court should have excluded Mr. West's declaration, however, the distinctive pattern of steadily increasing opprobrium toward plaintiff on the internet, viewed in the light most favorable to plaintiff, constitutes sufficient evidence for plaintiff to overcome defendant's special motion to strike.

### A. Plaintiff Presented Substantial Evidence in Support of His Defamation Claim.

In Oregon, the elements of a defamation claim are "'(1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm.'" *Neumann*, 261 Or. App. at 575, quoting *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or. App. 560, 584, 188 P.3d 332, *rev. den.*, 345 Or. 317 (2008).

Plaintiff testified that defendant's statements about plaintiff were false and injurious factual claims, and hence defamatory. ER 60-61, 89-90, 94, 97-98.

Exhibits 1 through 7 tend to demonstrate that defendant's statements were published, over and above the correlative portions of the complaint. ER 62-72.

Plaintiff did not have to do introduce evidence of special harm, because allegations such as those that defendant made against plaintiff are defamatory *per se* for several reasons. First, they tend to injure plaintiff in his business or profession. ER 96-97; *Davis v. Sladden*, 17 Or. 259, 261, 21 P. 140 (1889); *Affolter v. Baugh Const. Oregon, Inc.*, 183 Or. App. 198, 203-204, 51 P.3d 642 (2002); *Muresan v. Philadelphia Romanian Pentecostal Church*, 154 Or. App. 465, 473-474, 962 P.2d 711 (1998). Second, defendant imputed moral turpitude to plaintiff. ER 91-94; *Ruble v. Kirkwood*, 125 Or. 316, 320, 266 P. 252 (1928), *overruled in part on other grounds by Hinkle v. Alexander*, 244 Or. 267, 271, 411 P.2d 829 (1966). Third, defendant falsely accused plaintiff of committing a crime. ER 60-61, 90; *Muresan*, 154 Or. App. at 474. Thus, plaintiff did not have to introduce evidence of special harm. The district court was correct to rule that plaintiff's defamation claim survived defendant's special motion to strike.

The point at which the parties join issue most hotly is the inferential support for the proposition that defamatory remarks by defendant were the source of changing attitudes toward plaintiff among the parties' colleagues and friends during the fall of 2013. App. Brief at 18-20. Plaintiff has already addressed the factual coherence of that inference. *See supra* at 22-24. The *legal* dissonance that

25

mars the reasoning in defendant's objection originates in defendant's disregard of the pertinent case law clarifying how low an evidentiary threshold Or. Rev. Stat. §31.150 establishes for plaintiffs. The purpose of the anti-SLAPP law is to weed out lawsuits meant primarily to harass or intimidate people who are exercising their free speech rights. *Young*, 259 Or. App. at 508, *citing Staten*, 222 Or. App. at 32. If a plaintiff is able to produce evidence that tends to establish each element of the plaintiff's cause of action when viewed in the light most favorable to the plaintiff, the action must proceed. *Neumann*, 261 Or. App. at 570 n. 2, 575; *Young*, 259 Or. App. at 508, 510.

To combat this point of law, defendant marshals inapposite authority. For instance, as part of a larger cavil about not ignoring the word "substantial," defendant imports a federal definition of "substantial evidence" taken from a case written generations before the anti-SLAPP law. App. Brief at 22-23, citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 299, 59 S. Ct. 206, 83 L. Ed. 126 (1938). Oregon law is already abundantly clear about what "substantial evidence" means, however, as can be seen from the common use of the phrase in numerous unrelated sections of the Oregon Revised Statutes. *See e.g.* Or. Rev. Stat. §§34.040(1)(e), 109.309(3)(a)(C), 183.482(8)(c), 420A.203(6)(c), 663.215(1), 813.450(4)(c).

In affirming a determination that plaintiffs had presented substantial

evidence to overcome a special motion to strike, the Oregon Court of Appeals has held that substantial evidence may consist in part of reasonable inferences from other evidence. *OEA v. Parks*, 253 Or. App. 558, 565, 291 P.3d 789 (2012). The magistrate judge's inference from the evidence in the record viewed in the light most favorable to plaintiff was reasonable. Therefore, the district court was correct to conclude that plaintiff presented substantial evidence that defendant was the source of the defamatory remarks that caused the authors of Exhibits 1 through 7 to make their subsequent negative online statements about plaintiff.

### B. Plaintiff Presented Substantial Evidence in Support of His Intentional Infliction of Severe Emotional Distress Claim.

The case is no less clear-cut for plaintiff's claim of intentional infliction of severe emotional distress. To prevail on that claim, plaintiff must prove that (1) "defendant intended to inflict severe mental or emotional distress" or such distress was substantially certain to eventuate as a result of defendant's conduct; (2) defendant's actions did indeed result in severe mental and emotional distress on plaintiff's part; and (3) defendant's actions amounted to "'some extraordinary transgression of the bounds of socially tolerable conduct'" or went beyond "'any reasonable limit of social toleration.'" *Patton v. J.C. Penney Co., Inc.*, 301 Or. 117, 122, 719 P.2d 854 (1986) (quoting *Hall v. May Dept. Stores Co.*, 292 Or. 131, 135, 137, 637 P.2d 126 (1981); *Schiele v. Montes*, 231 Or. App. 43, 48, 218 P.3d 141 (2009). Plaintiff can meet this burden.

27

First, it is substantially certain that anyone who accuses someone else of sexual assault in a public forum will cause the accused person severe mental or emotional distress, particularly given the criminal penalties and social opprobrium that can follow such accusations. There is evidence to show that plaintiff made such claims. ER 60-72, 90-94. Plaintiff affirmatively suffered severe mental and emotional distress as a result. ER 61, 94-97. Third, to make a false sexual assault accusation is unequivocally a socially intolerable action. ER 60; *see Kraemer v. Harding*, 159 Or. App. 90, 110-111, 976 P.2d 1160 (1999). Thus, the magistrate judge correctly recommended that plaintiff's claim of intentional infliction of severe emotional distress survive defendant's special motion to strike.

Defendant argues that plaintiff did not present sufficient evidence of defendant's intent. App. Brief at 28-29. The best evidence of defendant's intent is inaccessible to plaintiff while discovery is stayed. Still, the magistrate judge was able to determine that, in the light most favorable to plaintiff, "it is reasonable to infer from the presumed falseness of [defendant]'s presumptive statements and from the identities of the persons to whom the statements were presumptively made that the statements were either made with the intent to inflict emotional distress on [plaintiff] or with the knowledge that they were substantially certain to cause such distress." ER 24-25. Viewing the evidence in the light most favorable to plaintiff, defendant blatantly and falsely accused plaintiff of rape in front of one

28

mutual friend, and said something to another mutual friend around the same time

that caused the second mutual friend to stop speaking with plaintiff. ER 23-24; *see*

ER 51-53, 61, 93-94. Given the "low bar" plaintiff must clear at this stage of the

action, *Young*, 259 Or. App. at 508, this should suffice.

### C. Plaintiff Presented Substantial Evidence in Support of His Intentional Interference with Prospective Economic Relations Claim.

Finally, plaintiff has alleged intentional interference with prospective

economic relations. This is the area in which additional discovery would most

assist plaintiff. Plaintiff's averments should still suffice to sustain the claim at this

preliminary stage, however. The elements of this tort are as follows:

(1) The existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage);

(2) Intentional interference with that relationship or advantage;

(3) By a third party;

(4) Accomplished through improper means or for an improper purpose;

(5) A causal effect between the interference and the harm to the relationship or prospective advantage; and

(6) Damages.

*Allen v. Hall,* 328 Or. 276, 281, 974 P.2d 199 (1999). *See McGanty v. Staudenraus,* 321 Or. 532, 535-536, 901 P.2d 841 (1995); *Straube v. Larson,* 287 Or. 357, 360-361, 600 P.2d 371 (1979); *Wampler v. Palmerton,* 250 Or. 65, 73-76, 439 P.2d 601 (1968).

Oregon State Bar, *Torts* §26.2 (2012 rev.).

Plaintiff has clearly pleaded the elements of this tort. ER 87-88, 94-97, 99. He has sworn to the truth of these allegations to the extent that the current state of his knowledge permits him to do. ER 61. Exhibits 4-8 corroborate plaintiff's allegations. ER 65-76. The court was correct to deny the special motion to strike as to this claim.

Specifically, the magistrate judge recommended that the district court find that multiple professional forums in which plaintiff was accustomed to working had become closed to him as a result of defendant's statements about plaintiff. As a result, plaintiff's job prospects materially suffered. ER 26-27; *see* ER 61, 91-97. Defendant rejoins that plaintiff's prospective economic relations with the corporate third parties enumerated in his complaint are speculative. App. Brief at 30. The problem with this argument is that it fails to grapple with the magistrate judge's accurate citation of Oregon case law, which provides that "[t]he requisite 'professional or business relationship' may be purely prospective in nature." ER 25, citing *Cron v. Zimmer*, 255 Or. App. 114, 125, 296 P.3d 567 (2013), and *McGanty*, 321 Or. at 535.

Defendant relies on a different passage in *Cron*. App. Brief at 30-31. The difficulty with that reliance is that it elides a key point: "a defendant can be liable for interference 'even though the arrangement interfered with does not rise to the dignity of a contract.'" ER 25, citing *Cron*, 255 Or. App. at 114, quoting *Luisi v.*

30

*Bank of Commerce*, 252 Or. 271, 275, 449 P.2d 441 (1969). The district court correctly overruled this argument and accepted the magistrate judge's recommendation that plaintiff presented substantial evidence to support a prima facie case as to his claim of intentional interference with prospective economic relations. This court should affirm the district court's order.

## CONCLUSION

For the foregoing reasons, the court should dismiss the appeal for lack of jurisdiction, or in the alternative affirm the order of the district court denying defendant's special motion to strike the complaint.

Respectfully submitted January 16, 2015,


/s/ Bear Wilner-Nugent
BEAR WILNER-NUGENT
Attorney for Plaintiff-Appellee
Michael G. Schwern

31

## **STATEMENT OF RELATED CASES**

Plaintiff knows of no related cases pending in this Court.

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that, pursuant to Fed. R. App. P. 32 (a)(7)(C) and

Ninth Circuit Rule 32-1, the attached answering brief is proportionately

spaced, has a typeface of 14 points or more and contains 7,057 words.

/s/ Bear Wilner-Nugent
BEAR WILNER-NUGENT
Attorney for Plaintiff-Appellee
Michael G. Schwern

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I also certify that all participants in this case are registered CM/ECF users.

/s/ Bear Wilner-Nugent
BEAR WILNER-NUGENT
Attorney for Plaintiff-Appellee
Michael G. Schwern

34